FILED

NOV 12 2026

BONNIE HACKLER
Clerk, U.S. District Court
By Deputy Clerk

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| JEFFERY CURTIS MALENKY, | ) | |
| Plaintiff, | ) | |
| v. | ) | CIV-26-138-JAR |
| JENNIFER LYNN ELKINS, | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

There is a difference between a promise broken and a promise that was a lie when made. There is another difference between money spent during a relationship and money lost because of fraud. This case requires the Court to recognize both.

Plaintiff Jeffery Curtis Malenky alleges that Defendant Jennifer Lynn Elkins repeatedly promised to marry him, accepted substantial financial benefits during their relationship, and ultimately married another man. Plaintiff seeks to recover more than $200,000 through claims of fraud, promissory estoppel, and intentional infliction of emotional distress.

The First Amended Complaint describes a relationship spanning nearly six years. It includes financial generosity, repeated marriage proposals, disagreements, broken engagements, renewed commitments, and allegations of deception. Plaintiff believes Defendant's conduct entitles him to recover the money he spent and compensation for the emotional distress he suffered.

The question before the Court is not whether Plaintiff has reason to feel deceived, disappointed, or financially wronged. It is whether the facts he alleges establish the elements of the causes of action he has chosen to pursue.

Before the Court is Defendant's Motion to Dismiss Plaintiff's First Amended Complaint for Failure to State a Claim (Dkt. No. 23). Plaintiff, proceeding pro se, filed a Response opposing dismissal (Dkt. No. 24). Defendant seeks dismissal of all three causes of action with prejudice. Plaintiff maintains that his claims are sufficiently pleaded and alternatively requests leave to amend.

For the reasons set forth below, Defendant's Motion is GRANTED. Counts I and II are dismissed without prejudice. Count III is dismissed with prejudice.

## I. BACKGROUND

Plaintiff and Defendant began a romantic relationship in 2020. Plaintiff resided in Texas, while Defendant lived in Oklahoma with her children. Despite the distance, the relationship continued for several years.

Plaintiff purchased a residence in Oklahoma and allowed Defendant and her children to occupy it rent free. In April 2023, Plaintiff advised Defendant that continued occupancy would require monthly rent. Later that month, Plaintiff proposed marriage and agreed to continue the rent-free arrangement on the understanding that Defendant would eventually relocate to Texas after her children completed high school. (Dkt. No. 22 ¶¶ 11, 13–16).

In January 2024, Plaintiff purchased another residence in Fort Gibson, Oklahoma. Defendant and her children moved into that residence in June 2024. Plaintiff also provided financial assistance for Defendant's personal expenses, travel, transportation, and other needs. (Id. ¶¶ 19–20, 66–67).

The relationship was not without difficulty. In July 2024, Defendant informed Plaintiff that she could not marry him because her children would not relocate to Texas. Plaintiff permitted Defendant to remain at the County Line residence until May 31, 2025, subject to monthly rent of $1,000 beginning in September 2024. Plaintiff alleges that he provided no additional financial assistance or gifts between July 19 and November 14, 2024. (Id. ¶¶ 22–25).

In November 2024, the parties again discussed marriage. Plaintiff alleges Defendant accepted another proposal, which included financial arrangements concerning her continued occupancy of Plaintiff's property and the property's eventual sale. (Id. ¶¶ 32–34).

Throughout 2025, the parties continued discussing marriage and a possible relocation to Texas. Defendant allegedly selected a wedding dress, discussed wedding arrangements, and considered plans to relocate. Nevertheless, disagreements concerning her children, family, career, and residence persisted. (Id. ¶¶ 35–38).

In November 2025, Defendant again expressed reluctance to leave Fort Gibson. Plaintiff responded by proposing additional financial arrangements intended to facilitate the marriage. (Id. ¶¶ 38–41).

On December 4, 2025, Plaintiff asked Defendant whether he should continue spending time and money on the proposed wedding. According to the complaint, Defendant again assured Plaintiff that she would marry him. Later that day, Defendant identified three engagement rings she wanted, and Plaintiff purchased them for $7,998.48. (Id. ¶¶ 42–43, 67).

On December 9, Plaintiff sent Defendant a proposed prenuptial agreement. After receiving no meaningful response, Plaintiff informed Defendant on December 13 that he would not expend additional time or money on the proposed marriage. He also directed Defendant to vacate his property by March 31, 2026. (Id. ¶¶ 44–45).

On December 27, 2025, Plaintiff received an anonymous telephone call suggesting that another man, Nathan Hays Elkins, was living with Defendant. Plaintiff then told Defendant that if she chose to be with Mr. Elkins, she must vacate the County Line residence by January 31, 2026. Defendant responded that she would vacate by March 31. Plaintiff later learned that Defendant had married Mr. Elkins in Las Vegas on January 1, 2026. (Id. ¶¶ 47, 56).

Plaintiff further alleges that on January 13, 2026, Defendant falsely represented that Mr. Elkins was merely a longtime friend assisting her in finding

housing. Plaintiff accepted that explanation and agreed to allow Defendant to remain in the residence through the end of the school year in May 2026. The complaint elsewhere describes the extended departure date as May 31. After discovering Defendant's marriage, Plaintiff again directed her to vacate by March 31. Defendant had vacated by March 15. (Id. ¶¶ 54, 56–61).

Plaintiff identifies numerous expenditures made during the relationship, including $24,725 for Defendant's cosmetic surgery, $7,998.48 for engagement rings purchased in December 2025, $25,837.26 for an automobile, additional jewelry, airfare and travel expenses, monetary transfers, and the claimed rental value of two residences Defendant occupied. Plaintiff also alleges providing other money, property, and services of value. He claims financial losses exceeding $200,000. (Id. ¶¶ 67, 82).

Based upon these allegations, Plaintiff asserts claims for fraud, promissory estoppel, and intentional infliction of emotional distress.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a complaint that fails to state a claim upon which relief can be granted.

To survive dismissal, a complaint must contain sufficient factual allegations, accepted as true, to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the pleaded

facts permit the Court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The Court accepts well pleaded factual allegations as true and draws reasonable inferences in Plaintiff's favor. But legal conclusions and unsupported characterizations of conduct are not entitled to the same presumption. *Id.* A complaint must provide more than labels, conclusions, or a recitation of the elements of a cause of action. *Twombly*, 550 U.S. at 555.

Plaintiff's pro se status requires the Court to construe his allegations liberally. It does not relieve him of the obligation to allege facts establishing a plausible entitlement to relief. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007).

Fraud claims are subject to the additional requirements of Federal Rule of Civil Procedure 9(b), which requires particularity concerning the circumstances constituting fraud. Ordinarily, the pleading must identify the allegedly false representations, the person making them, when and where they occurred, and their consequences. *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1236–37 (10th Cir. 2000).

The purpose of Rule 9(b) is to provide fair notice of the alleged fraudulent conduct and the factual basis supporting the claim. *Clinton v. Security Benefit Life Ins. Co.*, 63 F.4th 1264, 1277 (10th Cir. 2023).

Although knowledge and intent may be alleged generally, allegations of fraud based on information and belief must still identify the factual basis for that belief

when the relevant facts are peculiarly within the opposing party's knowledge. *Koch*, 203 F.3d at 1237.

The Court applies these standards to each cause of action.

## III. DISCUSSION

### A. Count I: Fraud

Plaintiff's fraud claim rests principally upon three allegations: Defendant repeatedly promised marriage without intending to perform; Defendant concealed her relationship with another man and subsequently her marriage to that man; and Defendant misrepresented her reasons for ending the parties' engagements to continue receiving financial benefits.

Defendant contends that none of these theories satisfies Oklahoma law or Rule 9(b).

Count I is insufficiently pleaded, although not for every reason Defendant advances.

#### 1. The alleged promises to marry

Under Oklahoma law, actionable fraud requires a false material representation made with knowledge of its falsity and the intention that another rely

upon it, together with actual reliance and resulting injury. *Derakhshan v. Tizzio*, 270 P.3d 215, 217 (Okla. Civ. App. 2011).

A promise concerning future conduct may constitute fraud when the promisor, at the time the promise is made, has no intention of performing it. *Id.* The critical inquiry is therefore the promisor's intention when the promise was made.

Plaintiff alleges that Defendant repeatedly promised marriage while having no intention of fulfilling those promises. (Dkt. No. 22 ¶ 75). But the complaint describes marriage discussions extending from April 2023 through December 2025, interrupted by disagreements, broken engagements, renewed commitments, and changing plans.

According to Plaintiff's own allegations, Defendant expressed reservations concerning relocation to Texas in April 2023. In July 2024, she advised Plaintiff that she could not marry him because she would not leave Fort Gibson. In November 2025, Defendant again expressed her unwillingness to relocate because of her children and family. (Id. ¶¶ 15–16, 22, 40).

These allegations show that Defendant's reservations were not entirely concealed. Plaintiff describes recurring disagreements concerning the circumstances under which the proposed marriage would occur.

Defendant also allegedly participated in wedding planning, selected jewelry and clothing, discussed travel, and considered a proposed prenuptial agreement.

Defendant argues that these circumstances demonstrate her genuine intention to marry Plaintiff.

The Court does not adopt that conclusion. Participation in wedding arrangements is consistent with an intention to marry, but it does not conclusively establish good faith. A person intending to deceive another could engage in such conduct to maintain the deception.

Nevertheless, Plaintiff must allege a plausible factual basis for concluding that the particular promises upon which his claim rests were knowingly false when made.

The Court does not require Plaintiff to prove Defendant's subjective intentions at the pleading stage. Nor does it require direct evidence of fraudulent intent. Defendant's reliance upon language from *Derakhshan* concerning proof of fraud by clear and convincing evidence does not alter the federal pleading standards governing this motion.

But the complaint must do more than allege that Defendant repeatedly promised marriage and ultimately married someone else.

The generalized assertion that Defendant never intended to marry Plaintiff throughout their multiyear relationship lacks sufficient factual support to establish that broad theory of fraud.

A broken promise, standing alone, does not establish that the promise was dishonest when made.

**2. The December 2025 representations**

Plaintiff identifies a more specific sequence of events occurring in December 2025.

He alleges that Defendant reaffirmed her willingness to marry him on December 4 and identified three engagement rings she wanted. Plaintiff purchased them that day. Less than one month later, Defendant married another man. (Dkt. No. 22 ¶¶ 42–43, 56, 67).

Unlike the generalized allegations of deception extending over several years, the December 4 exchange identifies a particular representation, a particular expenditure, and a relatively short period between the representation and Defendant's marriage to another person.

Those circumstances could support an inference of deception. They do not, however, resolve the remaining deficiencies in the pleading.

First, Plaintiff does not allege when Defendant's relationship with Mr. Elkins began, became romantic, or led to a decision to marry. He states that he intends to seek discovery concerning the timing of the alleged deception. (Dkt. No. 22 ¶¶ 76, 80).

The January 1 marriage is relevant to Defendant's intentions in December. But its proximity to the December 4 representation does not itself establish that Defendant had already decided to marry Mr. Elkins when she assured Plaintiff that she would marry him.

The complaint also describes intervening events. On December 13, Plaintiff advised Defendant that he would cease making wedding arrangements because he anticipated that she would not follow through. Defendant subsequently expressed disagreement with the proposed prenuptial agreement and again emphasized her unwillingness to leave Fort Gibson. (Dkt. No. 22 ¶¶ 45–46).

The Court does not draw an inference of honesty from these events. It simply recognizes that the complaint describes a changing relationship without adequately identifying the factual circumstances supporting Defendant's allegedly fraudulent intent when the December 4 promise was made.

Second, although Plaintiff identifies the purchase price of the engagement rings, he does not clearly allege what happened to them after purchase. The complaint does not establish whether Defendant received the rings, retained them, refused to return them, or whether Plaintiff continued to possess them.

Those circumstances are relevant to the financial injury allegedly resulting from the transaction. Plaintiff identifies the purchase, but he does not adequately

explain the loss he sustained as a consequence of Defendant's allegedly fraudulent representation.

An expenditure made in anticipation of marriage may constitute a recoverable loss, and Plaintiff need not plead the precise amount of damages. He must, however, plausibly allege an injury caused by the misrepresentation.

Finally, the December 2025 allegations do not explain how Defendant allegedly caused the much larger expenditures Plaintiff made during the preceding years. The complaint does not adequately distinguish the December transaction from the earlier expenditures Plaintiff also seeks to recover.

The Court considers these circumstances together, including the December assurance of marriage, the requested ring purchase, the December 27 report concerning Mr. Elkins, the January 1 marriage, and the allegedly false January 13 explanation. Plaintiff need not identify the precise date Defendant's intentions changed or produce direct evidence of those intentions. Even assuming these circumstances support a plausible inference of deception concerning a particular late 2025 promise, the complaint must still adequately allege the resulting injury. The Court's conclusion concerning that deficiency does not depend upon rejecting Plaintiff's proposed inference of fraudulent intent.

These deficiencies do not establish that Plaintiff could never plead an actionable claim arising from a particular December 2025 representation. They

establish that the current pleading does not adequately connect the alleged fraud to the losses for which Plaintiff seeks recovery.

### 3. Concealment of another relationship

Plaintiff next alleges that Defendant concealed her relationship with Mr. Elkins and later concealed their marriage.

Defendant argues that she owed Plaintiff no legal duty to disclose the details of her private romantic relationships.

Oklahoma law generally distinguishes actionable fraudulent concealment from mere silence. Absent a duty to disclose, a person's failure to volunteer information ordinarily does not constitute fraud. *Gibson v. Mendenhall*, 224 P.2d 251, 253-254 (Okla. 1950).

Such a duty may arise from the relationship between the parties or other circumstances creating a legal or equitable obligation to disclose. *Sutton v. David Stanley Chevrolet, Inc.*, 475 P.3d 847, 854 (Okla. 2020). A close personal relationship, standing alone, does not establish a confidential relationship. *Shoemaker v. Estate of Freeman*, 967 P.2d 871, 877 (Okla. 1998).

Plaintiff does not allege facts establishing a fiduciary or confidential relationship that independently required Defendant to disclose her relationship with Mr. Elkins. That conclusion does not resolve the alleged January 13 statement,

however. Once Defendant undertook to explain that relationship, the absence of a fiduciary relationship did not permit her to create a materially false impression. *Sutton v. David Stanley Chevrolet, Inc.*, 475 P.3d 847, 854 (Okla. 2020).

He asserts that on January 13, 2026, Defendant affirmatively represented that Mr. Elkins was merely a longtime friend helping her find housing. Defendant allegedly made that statement after marrying Mr. Elkins on January 1. For purposes of the present motion, the Court accepts that the statement was made and was false.

The absence of a disclosure duty therefore does not dispose of this alleged affirmative misrepresentation. The deficiency concerns the financial injury allegedly caused by Plaintiff's reliance.

**4. The January 13 representation and resulting injury**

Plaintiff alleges that he relied upon Defendant's explanation concerning Mr. Elkins and agreed to allow her to remain in his property until the end of the school year in May 2026. (Dkt. No. 22 ¶ 54). Elsewhere, the complaint identifies May 31 as the extended departure date. (Id. ¶¶ 56–57).

The Court accepts that allegation. Contrary to Defendant's suggestion, Plaintiff alleges that Defendant's representation induced him to extend her permitted occupancy. The remaining question is whether the complaint adequately identifies a financial loss caused by that extension.

The complaint first alleges that on December 13, Plaintiff permitted Defendant to remain until March 31, 2026. (Id. ¶ 45). After the December 27 report concerning Mr. Elkins, Plaintiff demanded that Defendant vacate by January 31 if she chose to be with him. Defendant replied that she would vacate by March 31. (Id. ¶ 47).

Plaintiff then alleges that after Defendant described Mr. Elkins as a longtime friend on January 13, he agreed to let her remain through the end of the school year in May. (Id. ¶ 54). That alleged accommodation followed Plaintiff's conditional January 31 demand. But the complaint does not allege that Defendant agreed to the earlier date or otherwise explain how that demand altered the previously stated March 31 arrangement.

After learning in February that Defendant had married Mr. Elkins, Plaintiff again directed her to vacate by March 31. He alleges that she had vacated by March 15. (Id. ¶¶ 56–61).

The Court does not disregard the January 31 demand. Nor does it assume, however, that the demand by itself established an enforceable departure date or a right to immediate possession. The pleading identifies competing departure dates without alleging facts explaining how the January 13 representation deprived Plaintiff of a right he otherwise would have exercised.

Plaintiff also has not sufficiently identified a particular financial loss attributable to the January 13 statement. He alleges no payment or transfer induced

by that representation, and he does not explain how Defendant's continued occupancy through March caused an additional loss distinct from the preexisting housing arrangement.

Although paragraph 67 assigns a monthly rental value to the County Line residence through March 2026, it does not distinguish a loss allegedly resulting from the January 13 representation from the value of occupancy Plaintiff had already permitted under the earlier arrangement.

The Court does not decide whether Plaintiff could have required Defendant to leave on January 31. The pleadings do not adequately establish the legal effect of that conditional demand. The deficiency is the absence of sufficient factual allegations connecting Defendant's challenged statement to a particular resulting financial injury.

Even assuming Defendant knowingly misrepresented her relationship status to influence Plaintiff, the complaint does not adequately allege a financial loss caused by reliance upon that representation.

Fraud requires more than deception. It requires detrimental reliance producing injury.

A lie may explain why a person acted. It does not establish liability unless the action caused a legally cognizable loss.

### 5. The alleged false explanations for ending the engagements

Plaintiff also alleges that Defendant falsely represented her reasons for ending the parties' engagements in July 2024 and December 2025. He contends that these explanations were intended to preserve financial benefits, including free or reduced housing and favorable terms for purchasing property. (Id. ¶ 77).

Defendant argues that an explanation for ending a relationship cannot support fraud because it is not a promise of future performance.

That argument is too broad.

A knowingly false statement concerning an existing fact or present intention is not necessarily immune from fraud liability merely because it is offered as an explanation rather than a promise of future conduct.

Nevertheless, Plaintiff has not sufficiently pleaded this theory.

The complaint repeatedly alleges that Defendant was reluctant to leave her children, father, career, and community in Oklahoma. Plaintiff identifies those concerns as recurring disagreements throughout the relationship.

He does not plead particular facts establishing that Defendant's stated concerns were knowingly false when expressed.

Nor does the complaint adequately identify a specific additional financial commitment Plaintiff made because he believed a particular explanation for ending an engagement.

Instead, Plaintiff alleges generally that Defendant used his emotional attachment to obtain continuing financial assistance.

That allegation does not sufficiently identify the false representation, the factual basis for its fraudulent character, the particular reliance it induced, and the resulting financial injury.

The Court accepts the pleaded statements and circumstances as true. It need not accept Plaintiff's ultimate characterization of Defendant's motives as an established fact.

6. **The claimed financial losses**

The most substantial deficiency in Count I concerns the connection between the alleged representations and Plaintiff's claimed losses.

Paragraph 67 identifies expenditures spanning several years. They include an automobile, cosmetic surgery, travel, jewelry, monetary transfers, and the claimed rental value of multiple properties.

The timing of these expenditures is significant. Plaintiff provided housing, purchased an automobile, paid for cosmetic surgery, and transferred money to

Defendant at various stages of their relationship, including periods when the parties had ended their engagements or disagreed about their future. By contrast, the December 2025 engagement-ring purchase followed a specific assurance of marriage. These distinctions matter because the alleged misrepresentation must have induced the particular expenditure for which recovery is sought. A promise made in December 2025 cannot establish fraudulent inducement of an expenditure made months or years earlier. Nor does Defendant's subsequent marriage to another man establish that her earlier promises were fraudulent when made. Plaintiff must adequately connect the alleged deception to the financial injury, not merely identify expenditures made during the relationship.

The complaint, however, largely treats those expenditures as a single financial loss resulting from Defendant's alleged overall dishonesty.

That is insufficient.

The fact that Plaintiff spent money during a romantic relationship does not itself establish that Defendant obtained the money through fraud.

Nor does the fact that Plaintiff would not have made those expenditures had he known the relationship would ultimately end establish that Defendant fraudulently induced them when made.

Plaintiff must identify the material representations upon which he relied and adequately allege how those representations caused the particular losses for which he seeks recovery.

For example, the complaint identifies cosmetic surgery expenses incurred in March 2025, but it does not identify a sufficiently particular fraudulent representation inducing that expenditure. The same difficulty attends the earlier automobile purchase, monetary transfers, and years of housing assistance.

Defendant's subsequent marriage cannot, by itself, supply the missing fraudulent intent and causation for transactions occurring months or years earlier.

Likewise, Plaintiff's general assertion that he provided financial benefits because he believed Defendant loved him does not distinguish gifts and voluntary support from property obtained through actionable deception.

The amount Plaintiff spent does not establish the amount Defendant fraudulently obtained. The two are not necessarily the same.

For these reasons, Count I does not adequately plead actionable fraud under Oklahoma law and the applicable federal pleading requirements. The Court does not conclude that an actionable fraudulent representation could never arise from these circumstances. Plaintiff may be able to allege additional facts concerning particular statements, Defendant's intentions when those statements were made, his reliance, and identifiable financial losses.

The present pleading, however, does not adequately do so. Count I is DISMISSED WITHOUT PREJUDICE.

**B. Count II: Promissory Estoppel**

Plaintiff alternatively seeks recovery under the doctrine of promissory estoppel. He alleges that Defendant made clear promises to marry him, reasonably expected him to rely upon those promises, and received money and property because of his reliance. (Dkt. No. 22 ¶¶ 83–88).

Defendant contends that this claim is duplicative of the fraud claim, barred by the availability of legal remedies, prohibited by Oklahoma's statute of frauds, and deficient in its essential elements.

The Court addresses these arguments separately.

**1. Overlapping allegations do not independently resolve Count II.**

Defendant first argues that Count II is impermissibly duplicative of Count I.

She relies upon *Key v. Exxon Mobil Corp.*, 508 F. Supp. 3d 1072 (E.D. Okla. 2020), and *Horton v. Bank of America, N.A.*, 189 F. Supp. 3d 1286 (N.D. Okla. 2016), which address the distinction between contractual and tort claims arising from substantially identical obligations and injuries.

Defendant's authorities address fraud claims that duplicate claims for breach of an existing contract. They do not resolve whether Plaintiff may alternatively pursue fraud and promissory estoppel here. The Court therefore declines to dismiss Count II merely because its allegations overlap with Count I and instead examines whether Plaintiff has adequately pleaded the elements of promissory estoppel.

**2. The statute of frauds does not categorically bar the alleged marriage promises.**

Defendant next argues that the oral promises underlying Count II violate Oklahoma's statute of frauds.

But the authorities Defendant cites require a more precise distinction.

In *Byers v. Byers*, 618 P.2d 930, 933 (Okla. 1980), the Oklahoma Supreme Court distinguished mutual promises to marry from other oral promises made in consideration of marriage, which fall within the statute of frauds.

Likewise, *Nickell v. Nickell*, 251 P.2d 787, 789 (Okla. 1952), held unenforceable an unwritten agreement to adopt a child and make a will in his favor in consideration of the mother's agreement to remarry. That collateral undertaking was distinct from the mutual promises to marry expressly excepted from the statute.

Here, Plaintiff alleges mutual promises of marriage.

The Court therefore cannot conclude that such promises are necessarily unenforceable merely because they were oral.

However, the parties' alleged collateral financial arrangements present different considerations. Promises concerning the disposition of property, proceeds from a future sale, or other financial benefits are not automatically rendered enforceable simply because they arose during negotiations about marriage.

The Court declines to dismiss Count II on Defendant's categorical statute of frauds argument.

That conclusion does not establish the sufficiency of Plaintiff's promissory-estoppel claim.

**3. Plaintiff has not adequately pleaded the elements of promissory estoppel**

Under Oklahoma law, promissory estoppel requires: (1) a clear and unambiguous promise; (2) foreseeable reliance; (3) reasonable and detrimental reliance; and (4) circumstances in which injustice can be avoided only by enforcement of the promise. *Russell v. Board of Cnty. Comm'rs, Carter Cnty.*, 952 P.2d 492, 503 (Okla. 1997).

Assuming that some of Defendant's statements were sufficiently definite promises of marriage, Plaintiff must still plausibly allege foreseeable, reasonable, and

detrimental reliance, together with circumstances making enforcement necessary to avoid injustice. The complaint does not adequately allege those remaining elements.

First, the alleged promises were made in the context of a relationship whose future depended upon unresolved conditions.

The parties repeatedly disagreed about relocation, Defendant's children, housing, financial arrangements, and ultimately a proposed prenuptial agreement.

Plaintiff alleges that Defendant expressly rejected marriage in July 2024 and communicated substantial reservations on other occasions.

Those circumstances do not categorically prevent reasonable reliance upon a subsequent promise. They do, however, make it necessary to distinguish a particular promise reasonably inducing a particular expenditure from a general hope that the relationship would eventually lead to marriage.

Plaintiff has not adequately made that distinction.

Second, Plaintiff identifies substantial financial expenditures but generally alleges that they were made because he believed Defendant intended to marry him.

The complaint does not adequately explain why those particular expenditures constituted foreseeable and reasonable reliance upon the alleged promises.

The purchase of jewelry directly associated with an engagement may present a different question from paying ordinary living expenses, purchasing an automobile, financing cosmetic surgery, or providing years of housing assistance.

But Count II does not adequately distinguish those transactions or identify the particular promises and anticipated reliance associated with them.

Plaintiff explains that his December 13 decision to stop wedding preparations was intended to mitigate further expenditures, not repudiate Defendant's earlier promises. He also disclaims recovery for gifts preceding the engagements. The Court does not treat either his decision to stop spending or his earlier generosity as independently defeating Count II. Its conclusion concerns whether the expenditures for which he actually seeks recovery are sufficiently connected to foreseeable, reasonable, and detrimental reliance upon identifiable promises.

Third, Plaintiff's allegations establish that he continued providing financial assistance despite repeated disagreements and express warnings concerning Defendant's unwillingness to relocate or proceed with marriage.

The Court does not conclude that continuing to support a romantic partner after a disagreement is inherently unreasonable.

It concludes only that Plaintiff has not sufficiently alleged why his expenditures constituted reasonable and detrimental reliance upon an identifiable

promise, rather than voluntary decisions made during an uncertain personal relationship.

**4. Plaintiff has not adequately pleaded that enforcement is necessary to avoid injustice**

Plaintiff alleges that it would be inequitable for Defendant to retain the benefits he provided without marrying him.

But the fourth element of promissory estoppel requires more than identifying a benefit received by another person.

The doctrine requires circumstances in which injustice can be avoided only through enforcement of the promise. *Russell*, 952 P.2d at 503.

Plaintiff does not adequately distinguish voluntary expenditures from financial commitments induced by promises whose enforcement is necessary to prevent injustice.

The December 2025 engagement rings again present the closest question.

Defendant allegedly identified the rings she wanted shortly after reaffirming her intention to marry Plaintiff. Plaintiff purchased them that day. (Dkt. No. 22 ¶¶ 42–43).

Those circumstances could support foreseeable reliance upon a particular promise.

But Plaintiff has not sufficiently alleged whether Defendant received or retained the rings, whether Plaintiff continues to possess them, or why the alleged financial injury requires enforcement of Defendant's marriage promise to avoid injustice.

The Court does not conclude that expenditures made in preparation for marriage are categorically excluded from promissory estoppel. It concludes that the present allegations do not adequately establish all the elements necessary for relief.

The same deficiency is more pronounced concerning the earlier housing, automobile, cosmetic surgery, and monetary expenditures.

The Court cannot infer that enforcement is necessary to avoid injustice merely because Plaintiff provided substantial financial assistance and the anticipated marriage never occurred.

#### 5. The remaining arguments do not require a different result

Defendant further argues that promissory estoppel is unavailable when an adequate remedy at law exists. She relies upon *Krug v. Helmerich & Payne, Inc.*, 320 P.3d 1012, 1022 (Okla. 2013).

The Court recognizes the equitable limitations upon relief where an adequate legal remedy is available.

But it need not determine whether another legal remedy would necessarily foreclose promissory estoppel under the circumstances presented.

Even assuming the doctrine is otherwise available, Plaintiff has not adequately pleaded its essential requirements.

The deficiency lies in the present allegations of reasonable reliance, resulting detriment, and the necessity of enforcement. It does not depend upon categorically prohibiting promissory estoppel whenever a promise concerns marriage.

A promise may create an expectation. Promissory estoppel requires more. It requires a legally sufficient reason to make that expectation enforceable.

Plaintiff has not adequately pleaded that reason. Count II is DISMISSED WITHOUT PREJUDICE.

The Court will permit Plaintiff an opportunity to allege, if he can, the particular promises, the expenditures reasonably induced by those promises, the circumstances making his reliance reasonable, and why enforcement is necessary to avoid injustice.

## C. Count III: Intentional Infliction of Emotional Distress

Plaintiff's final claim alleges that Defendant's conduct during and following the deterioration of their relationship caused severe emotional distress.

Unlike Counts I and II, the deficiency in Count III is not principally a failure to identify the relevant conduct.

Plaintiff describes that conduct in detail.

The problem is that the alleged conduct does not satisfy the demanding legal standard governing this tort.

### 1. Oklahoma imposes a demanding threshold for outrageous conduct

To establish intentional infliction of emotional distress, a plaintiff must show that the defendant acted intentionally or recklessly, engaged in extreme and outrageous conduct, caused the plaintiff emotional distress, and that the resulting distress was severe. *Computer Publ'ns, Inc. v. Welton*, 49 P.3d 732, 735 (Okla. 2002).

The tort does not provide a remedy for every cruel, offensive, or emotionally harmful act.

Liability requires conduct so extreme in degree and outrageous in character that it exceeds the bounds of conduct tolerated in a civilized society. *Breeden v. League Services Corp.*, 575 P.2d 1374, 1376 (Okla. 1978).

The Court must initially determine whether the alleged conduct may reasonably be regarded as sufficiently extreme and outrageous. Only when reasonable persons could differ on that threshold question does the issue proceed to the jury. *Miller v. Miller*, 956 P.2d 887, 901 (Okla. 1998); *Comput. Publ'ns, Inc. v. Welton*, 49 P.3d 732, 735–36 (Okla. 2002).

The Court therefore must do more than accept Plaintiff's characterization of Defendant's conduct as outrageous. It must examine what Defendant allegedly did and determine whether those actions meet the legal standard.

**2. The conduct alleged does not meet that threshold.**

Paragraph 91 of the First Amended Complaint identifies the conduct supporting Count III.

Plaintiff alleges that Defendant communicated the termination of their relationship cruelly, avoided communications, accused him of intentionally harming her and her children, called him evil and a monster, made accusations concerning their sexual relationship, accused him of making threats, expressed satisfaction when she believed he had made mistakes, and publicized her subsequent marriage on social media.

The Court does not minimize the seriousness of some of those allegations.

An accusation of sexual misconduct may be profoundly damaging. A false accusation concerning threats of violence may likewise cause substantial distress.

But the existence of a hurtful or serious accusation does not automatically establish intentional infliction of emotional distress.

The complaint does not allege that Defendant initiated a knowingly false criminal prosecution, obtained a protective order through fabricated evidence, publicly disseminated the alleged sexual accusations, or engaged in comparable conduct beyond the personal disagreements described.

Plaintiff alleges that Defendant threatened to seek a protective order, not that one was obtained through fraudulent means.

Plaintiff also complains that Defendant avoided his communications and ultimately directed him to communicate through her attorney.

However frustrating or emotionally painful that refusal may have been, ending personal communications does not become outrageous conduct merely because the other person desires an explanation or reconciliation.

Similarly, Defendant's decision to publish photographs of her marriage on social media, even if deliberately withheld from Plaintiff and even if intended to cause him emotional pain, does not satisfy Oklahoma's demanding standard.

The Court considers the alleged conduct collectively, including the incorporated allegations of deceptive marriage promises, financial inducements, concealment of another relationship and marriage, and the accusations and communications surrounding the breakup. Its conclusion does not rest upon considering the statements in paragraph 91 apart from that alleged course of conduct.

Taken together, they describe accusations, disagreements, emotional hostility, and the breakdown of a personal relationship. They do not describe conduct sufficiently extreme and outrageous to establish this tort.

In *Breeden*, the Oklahoma Supreme Court affirmed summary judgment for collection companies whose conduct included collection letters, repeated attempts to telephone the plaintiff, and one conversation in which she was called a liar and a deadbeat. The court held that the conduct did not meet the extreme and outrageous threshold and that reasonable persons could not differ on that conclusion. *Breeden*, 575 P.2d at 1378.

Plaintiff's allegations fall on the same side of that legal boundary.

**3. Miller does not require a different result.**

Plaintiff acknowledges the Court's initial gatekeeping responsibility but argues that reasonable persons could regard the alleged conduct as sufficiently outrageous to permit recovery. The Court disagrees. Although *Miller* recognizes that

the issue proceeds to the jury when reasonable persons may differ, the allegations here do not cross that threshold.

Moreover, *Miller* involved allegations of a paternity deception maintained for approximately fifteen years, during which the plaintiff developed and maintained a parental relationship with the child. The defendants then allegedly revealed the deception to the child and sought to undermine that relationship by fostering a relationship with her biological father. The Oklahoma Supreme Court held that those allegations could reasonably be regarded as sufficiently extreme and outrageous to survive dismissal. *Miller*, 956 P.2d at 901–02.

That decision does not establish that every deception or cruel act arising from a romantic relationship creates a triable claim.

The Court must evaluate the conduct actually alleged.

Here, Plaintiff describes serious personal disappointment, alleged dishonesty, and hostile statements surrounding the end of a relationship. He does not allege circumstances comparable to the prolonged deception and efforts to undermine an established parental relationship.

Nor do the allegations resemble the extended course of unwanted contact, pursuit, and harassment examined in *Computer Publications*. *Comput. Publ'ns*, 49 P.3d at 736. Plaintiff's reliance on the "entire absence of proof" language in Computer Publications is also misplaced. That language describes review of a motion for

directed verdict after trial, not the sufficiency of a complaint. *Comput. Publ'ns, Inc. v. Welton*, 49 P.3d 732, 735 (Okla. 2002). That evidentiary standard does not displace the pleading requirements governing this motion.

Those decisions recognize the availability of the tort in sufficiently extraordinary circumstances. They do not eliminate its threshold requirements.

**4. The allegation of severe distress does not cure the deficient conduct.**

Plaintiff alleges that Defendant's behavior caused extreme anxiety, irritability, impatience, and loss of sleep. He further alleges that he obtained prescription medication on January 12, 2026, to supplement over-the-counter medications. (Dkt. No. 22 ¶ 93).

The Court accepts those allegations as true.

Defendant argues that Plaintiff has not established severe emotional distress and did not obtain medical treatment. The complaint's express allegation concerning prescription medication prevents the Court from adopting the latter characterization without qualification.

The Court need not decide whether the alleged distress satisfies the severity requirement. Even assuming it does, the alleged conduct does not meet the separate requirement of being extreme and outrageous. The law does not measure

outrageousness solely by the depth of the injury. The conduct itself must cross the line.

5. **Further amendment would be futile.**

Defendant requests dismissal of Count III with prejudice. The Court agrees. Plaintiff has already amended his complaint and provided an extensive account of Defendant's allegedly wrongful conduct. Paragraph 91 identifies numerous particular statements and actions, while paragraph 93 describes the emotional consequences.

Plaintiff's response does not identify additional conduct of a materially different character that would overcome the deficiencies discussed above. Instead, Plaintiff maintains that the already pleaded conduct is sufficiently outrageous and that the issue should proceed to a jury.

But Oklahoma law assigns the initial determination of outrageousness to the Court.

This is not a case in which the claim fails merely because Plaintiff omitted the date of a statement or inadequately described the circumstances surrounding an otherwise actionable event.

The alleged conduct itself is insufficient as a matter of law.

Further elaboration of the same events would not transform the alleged insults, accusations, avoidance, and social-media posts into extreme and outrageous

conduct. Amendment would therefore be futile. *See Kay v. Bemis*, 500 F.3d 1214, 1217 (10th Cir. 2007).

Accordingly, Count III is DISMISSED WITH PREJUDICE.

## IV. LEAVE TO AMEND

Defendant argues that all three claims should be dismissed with prejudice because Plaintiff has already amended his complaint and cannot cure its deficiencies.

The Court disagrees as to Counts I and II.

The shortcomings in those claims concern, at least in part, the factual specificity of Plaintiff's allegations and his failure to adequately connect particular representations or promises to particular financial losses.

The Court cannot conclude on the present record that Plaintiff necessarily lacks additional facts capable of curing those deficiencies.

For Count I, such facts might concern specific representations, the circumstances giving rise to a plausible inference of contemporaneous fraudulent intent, particular financial transactions, and the resulting loss.

For Count II, they might concern specific promises, identifiable and foreseeable acts of reliance, the reasonableness of that reliance, and circumstances making enforcement necessary to avoid injustice.

The Court expresses no opinion concerning whether Plaintiff can ultimately establish either claim.

The opportunity to amend is not an invitation to conduct discovery in search of a cause of action or to assert allegations without an adequate factual basis. It is an opportunity to plead an otherwise legally cognizable claim with the required factual support.

Repeating conclusions will not cure the deficiencies identified here. An amended complaint must supply the missing factual allegations. The Court does not require Plaintiff to prove his claims at this stage. It does require him to plead them.

Plaintiff has already amended his complaint once. The Court will permit one further amendment because it cannot conclude that the identified deficiencies are necessarily incurable. But Plaintiff is advised that a Second Amended Complaint failing to correct those deficiencies may result in dismissal of the remaining claims with prejudice.

Count III presents a different question. Because its deficiency arises from the legal character of the conduct alleged, rather than insufficient detail concerning that conduct, the Court finds further amendment of that claim would be futile.

Plaintiff may therefore amend Counts I and II only.

## V. CONCLUSION

This dispute arises from promises of marriage, substantial financial assistance, and a relationship that ended with Defendant marrying someone else. Plaintiff alleges deception and loss. His complaint must connect those allegations through the elements of a recognized claim.

Financial generosity, however substantial, does not entitle one person to another's affection, commitment, or marriage. Nor does the end of a relationship automatically make that generosity recoverable. The law may remedy fraud. It cannot compel affection.

The Court will judge the claims Plaintiff pleaded, not the future he imagined.

For the foregoing reasons, Defendant's Motion to Dismiss (Dkt. No. 23) is GRANTED as follows:

1. Count I, Fraud, is **DISMISSED WITHOUT PREJUDICE.**
2. Count II, Promissory Estoppel, is **DISMISSED WITHOUT PREJUDICE.**
3. Count III, Intentional Infliction of Emotional Distress, is **DISMISSED WITH PREJUDICE.**

Plaintiff is granted leave to file a Second Amended Complaint addressing Counts I and II only, within fourteen (14) days of entry of this Order. No further amendment of Count III is permitted.

If Plaintiff fails to file a Second Amended Complaint within that period, the Court will determine the appropriate final disposition of the remaining claims.

**IT IS SO ORDERED** this 12th day of November, 2026.

Jason A. Robertson
UNITED STATES MAGISTRATE JUDGE